# Exhibit A

1    **LATHAM & WATKINS LLP**
     Manny A. Abascal (Bar No. 171301)
2    *manny.abascal@lw.com*
     Brian T. Glennon (Bar No. 211012)
3    *brian.glennon@lw.com*
     Kristen M. Tuey (Bar No. 252565)
4    *kristen.tuey@lw.com*
     355 South Grand Avenue, Suite 100
5    Los Angeles, CA 90071-1560
     Tel:  (213) 485-1234
6    Fax:  (213) 891-8763

7    **LATHAM & WATKINS LLP**
     Michele D. Johnson (Bar No. 198298)
8    *michele.johnson@lw.com*
     Andrew R. Gray (Bar No. 254594)
9    *andrew.gray@lw.com*
     650 Town Center Drive, 20th Floor
10   Costa Mesa, CA  92626-1925
     Tel:  (714) 540-1235
11   Fax:  (714) 755-8290

12   Attorneys for Defendant
     Steven A. Sugarman

13

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17 IN RE BANC OF CALIFORNIA SECURITIES LITIGATION | CASE NO. 8:17-00118-AG-DFM consolidated with CASE NO. 8:17-cv-00138-AG-DFM |
| 18 | |
| 19 | **DEFENDANT STEVEN A. SUGARMAN'S NOTICE OF THIRD PARTY SUBPOENAS TO PRODUCE DOCUMENTS** |
| 20 | |
| 21 This Document Relates to: | |
| 22      ALL ACTIONS | Judge:     Hon. Andrew J. Guilford Courtroom:  10D |
| 23 | Trial Date:    October 22, 2019 |
| 24 | |

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 8:17-cv-00118-AG-DFM
NOTICE OF THIRD PARTY SUBPOENAS TO
PRODUCE DOCUMENTS

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Steven A. Sugarman in the above-captioned action will promptly serve a Subpoena for Production of Documents in a Civil Action on the following non-parties.  True and correct copies of the Subpoenas are attached hereto as Exhibits 1-10.

| Non-Party | Date/Time | Location |
| --- | --- | --- |
| Castalian Partners Value Fund LP, c/o Harvard Business Services, Inc., 16192 Coastal Highway, Lewes Delaware 19958 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Metro Legal Services, Inc., 330 Second Ave. South, Ste. 150, Minneapolis, MN  55401, (877) 591-9979 |
| James Gibson, LLC 200 Water Street, Suite 200 Excelsior, MN 55331 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Metro Legal Services, Inc., 330 Second Ave. South, Ste. 150, Minneapolis, MN  55401, (877) 591-9979 |
| Stevenson Capital Partners Limited Partnership, c/o Lawrence Spielman SK8P, LLP 1745 Broadway, 18th Floor, New York, NY 10019 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Beehive Attorney Service, 10808 S. River Front Pkwy, Ste. 3032, South Jordan, UT 84095, (877) 591-9979 |
| CSS, LLC, c/o Jennifer Zordani, 120 N. La Salle Street, Suite 2000, Chicago, IL 60602 | August 8, 2018 at 9:00 a.m. | Latham & Watkins LLP 330 North Wabash, Suite 2800 Chicago, IL 60611 |
| Adam J.  Denno JT Ten, 3038 N Raleigh Street Denver, CO 80212 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Dispatch Legal Services, 5910 S. University Blvd., Unit C18-146, Greenwood Village, CO 80121, (877) 591-9979 |

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 8:17-cv-00118-AG-DFM
NOTICE OF THIRD PARTY SUBPOENAS TO
PRODUCE DOCUMENTS

| | | |
|---|---|---|
| Kalyn Matthews Denno, 3038 N Raleigh Street Denver, CO 80212 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Dispatch Legal Services, 5910 S. University Blvd., Unit C18-146, Greenwood Village, CO 80121, (877) 591-9979 |
| David Matthews, 5638 Tremont Street, Dallas Texas 75214 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 |
| Gary Matthews, 5623 Suwanee Road, Fairway, KS 66205 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Executive Investigative Service, 927 S. Sunset Dr., Olathe, KS 66061, (877) 591-9979 |
| Keith Allen Dilling, 13208 Meandering Way, Dallas TX 75240 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 |
| Rosemary Norris Hall, 6848 Bandera Avenue, Apartment 237, Dallas, TX 75225 | August 8, 2018 at 9:00 a.m. | First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 |
| Michelman & Robinson 10880 Wilshire Boulevard 19th Floor Los Angeles, CA 90024 | August 8, 2018 at 9:00 a.m. | Latham & Watkins LLP 355 S. Grand Ave., Suite 100 Los Angeles, CA 90071 |

Dated: July 17, 2018

LATHAM & WATKINS LLP

By: */s/ Kristen M. Tuey*
    Kristen M. Tuey

*Attorneys for Defendant Steven A. Sugarman*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 8:17-cv-00118-AG-DFM
NOTICE OF THIRD PARTY SUBPOENAS TO
PRODUCE DOCUMENTS

1

## PROOF OF SERVICE

2

       I am employed in the County of Los Angeles, State of California.  I

3
am over the age of 18 years and not a party to this action.  My business address is
Latham & Watkins LLP, 355 S. Grand Avenue, Suite 100 Los Angeles, CA 90071.

4

5
       On **July 17, 2018** I served the following document described as:

6
**DEFENDANT STEVEN A. SUGARMAN'S NOTICE OF THIRD PARTY
SUBPOENAS TO PRODUCE DOCUMENTS**

7

8
by serving a true copy of the above-described document in the following manner:

9

## BY ELECTRONIC MAIL

10
       The above-described document was transmitted via electronic mail to
the following parties on **July 17, 2018**:

11

12
      Email:  MOFO_BOC@mofo.com

13
                JNam@mofo.com

                NHorstman@rgrdlaw.com

14
                EOliver@rgrdlaw.com

                HectorM@rgrdlaw.com

15
                LLargent@rgrdlaw.com

                MAlpert@rgrdlaw.com

16

17
       I declare that I am employed in the office of a member of the Bar of,
or permitted to practice before, this Court at whose direction the service was made

18
and declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

19

20
       Executed on **July 17, 2018**, at Los Angeles, California.

21

22
             Claudia M. Barberena

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 8:17-cv-00118-AG-DFM
NOTICE OF THIRD PARTY SUBPOENAS TO
PRODUCE DOCUMENTS

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   SACV 17-00118 AG (DFMx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Castalian Partners Value Fund LP, c/o Harvard Business Services, Inc.,
16192 Coastal Highway, Lewes Delaware 19958

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Metro Legal Services, Inc., 330 Second Ave. South, Ste. 150, Minneapolis, MN  55401, (877) 591-9979 | Date and Time:<br><br>08/08/2018 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        07/17/2018

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/  Kristen M. Tuey |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*

Defendant Steven A. Sugarman                                        , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.    "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

2.    "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

3.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.    "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

5.    "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

6.    "Banc Securities" means any security, financial interest, preferred share, common share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option

(including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

7.　　"Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

8.　　"Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

9.　　"Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

10.　　"Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

11.　　"Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.　　"Concerning" means relating to, referring to, describing, evidencing, or constituting.

13.　　"COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

14.　　"COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives,

consultants, internal and external attorneys, or any other person acting on their behalf.

15.  "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.  "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

17.  "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO CASTALIAN PARTNERS

layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

18.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

19.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

22.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC, Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors

Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

23.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES and with respect to Castalian Partners Value Fund, LP, any individual or entity which invested in or owns a financial interest in Castalian Partners Value Fund, LP.

24.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

25.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives,

consultants, internal and external attorneys, or any other person acting on their behalf.

28.    "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.    "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

30.    "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

31.    "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

32.    "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

33.    "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

34.    "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

35.    "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October

2016.

36.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

37.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

38.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

39.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

40.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

41.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

42.     "You," or "your" means (a) Castalian Partners Value Fund, LP; (b) any owned, operated or affiliated predecessors, successors, parents, subsidiaries, affiliates, divisions,

advisors, partnerships, funds, investment vehicles owned, controlled by, associated with Castalian Partners Value Fund, LP or in which Castalian Partners Value Fund, LP invested (collectively "Castalian Affiliates"); and (c) any directors, officers, employees, agents, advisors, representatives, and all other persons acting or purporting to act on behalf of Castalian Partners Value Fund, LP or Castalian Affiliates.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

a.      the privilege being asserted;

b.      the person on whose behalf the privilege is asserted;

c.      a precise statement of the facts upon which the claim of privilege is based; and

d.      identify the purported privileged document, including:

   (1)      its nature, e.g., letter, memorandum, tape, etc.;

   (2)      the date it was prepared;

   (3)      the date the document bears;

   (4)      the date the document was sent;

   (5)      the date it was received;

   (6)      the name of the person who prepared the document;

   (7)      the name(s) of the person(s) who received the document;

   (8)      the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

   (9)      a statement of whom each identified person represented or purported to represent at all relevant times.

5.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.      The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each

request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions herein.

## III.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.   DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES,

including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU

and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno, JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other

BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

REQUEST NO. 11:

All INVESTORS in YOU as of October 18, 2016, including contact information sufficient to identify the principals, addresses, and contact information associated with the INVESTOR.

EXHIBIT 2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.   SACV 17-00118 AG (DFMx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          James Gibson, LLC 200 Water Street, Suite 200 Excelsior, MN 55331

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Metro Legal Services, Inc., 330 Second Ave. South, Ste. 150, Minneapolis, MN  55401, (877) 591-9979 | Date and Time:   08/08/2018 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/17/2018

CLERK OF COURT

                                                                OR

_____          /s/  Kristen M. Tuey
*Signature of Clerk or Deputy Clerk*          _____
                                                                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:
Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                            *Server's signature*

                                              _____
                                                            *Printed name and title*

                                              _____
                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

I.     **DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Gibson," "you," or "your" shall mean James Gibson and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.      "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.     "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.     "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.     "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.     "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.     "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.     "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.     "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.     "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.     "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.     "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.     "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.     "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.     "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO JAMES GIBSON

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

a.     the privilege being asserted;

b.     the person on whose behalf the privilege is asserted;

c.     a precise statement of the facts upon which the claim of privilege is based; and

d.     identify the purported privileged document, including:

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO JAMES GIBSON

(1)     its nature, e.g., letter, memorandum, tape, etc.;

(2)     the date it was prepared;

(3)     the date the document bears;

(4)     the date the document was sent;

(5)     the date it was received;

(6)     the name of the person who prepared the document;

(7)     the name(s) of the person(s) who received the document;

(8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.     If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.     The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.     The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

herein.

## III.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.   DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO JAMES GIBSON

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

# EXHIBIT 3

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   SACV 17-00118 AG (DFMx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Stevenson Capital Partners Limited Partnership, c/o Lawrence Spielman SK8P, LLP
1745 Broadway, 18th Floor, New York, NY 10019

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Beehive Attorney Service, 10808 S. River Front Pkwy, Ste. 3032, South Jordan, UT  84095, (877) 591-9979 | Date and Time: 08/08/2018 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/17/2018

*CLERK OF COURT*

OR

_____            /s/  Kristen M. Tuey
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

5.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

6.      "Banc Securities" means any security, financial interest, preferred share, common share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option

(including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

7.     "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

8.     "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

9.     "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

10.     "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

11.     "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

13.     "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

14.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives,

consultants, internal and external attorneys, or any other person acting on their behalf.

15.      "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.      "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

17.      "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file

layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

18.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

19.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

22.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC, Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO STEVENSON CAPITAL PARTNERS LIMITED PARTNERSHIP

Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

23.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES and with respect to Stevenson Capital Partners Limited Partnership, any individual or entity which invested in or owns a financial interest in Stevenson Capital Partners Limited Partnership.

24.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

25.     "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates,

divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.     "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

30.     "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

31.     "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

32.     "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

33.     "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

34.     "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

35.     "Shorts" shall mean INVESTORS engaged in the practice of short selling

SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

36.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

37.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

38.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

39.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

40.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

41.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

42.     "You," or "your" means (a) Stevenson Capital Partners Limited Partnership; (b)

any owned, operated or affiliated predecessors, successors, parents, subsidiaries, affiliates, divisions, advisors, partnerships, funds, investment vehicles owned, controlled by, associated with Stevenson Capital Partners Limited Partnership or in which Stevenson Capital Partners Limited Partnership invested (collectively "Stevenson Affiliates"); and (c) any directors, officers, employees, agents, advisors, representatives, and all other persons acting or purporting to act on behalf of Stevenson Capital Partners Limited Partnership or Stevenson Affiliates.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is

claimed together with the following information:

    a.    the privilege being asserted;

    b.    the person on whose behalf the privilege is asserted;

    c.    a precise statement of the facts upon which the claim of privilege is based; and

    d.    identify the purported privileged document, including:

        (1)    its nature, e.g., letter, memorandum, tape, etc.;

        (2)    the date it was prepared;

        (3)    the date the document bears;

        (4)    the date the document was sent;

        (5)    the date it was received;

        (6)    the name of the person who prepared the document;

        (7)    the name(s) of the person(s) who received the document;

        (8)    the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

        (9)    a statement of whom each identified person represented or purported to represent at all relevant times.

    5.    If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

    6.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

    7.    The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO STEVENSON CAPITAL PARTNERS LIMITED PARTNERSHIP

conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions herein.

## III.    RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.    DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;

- Due diligence materials obtained from BANC;

- Documents regarding potential investments in BANC;

- COMMUNICATIONS with BANC board members, officers, or other representatives; and

- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO STEVENSON CAPITAL PARTNERS LIMITED PARTNERSHIP

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno, JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver,

LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

REQUEST NO. 11:

All INVESTORS in YOU as of October 18, 2016, including contact information sufficient to identify the principals, addresses, and contact information associated with the INVESTOR.

EXHIBIT 4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   SACV 17-00118 AG (DFMx) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       CSS, LLC, c/o Jennifer Zordani, 120 N. La Salle Street, Suite 2000, Chicago, IL 60602

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Latham & Watkins LLP<br> 330 North Wabash, Suite 2800<br> Chicago, IL 60611 | Date and Time:<br><br> 08/08/2018 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       07/17/2018

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/  Kristen M. Tuey |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.     "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

2.     "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

3.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.     "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

5.     "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

6.     "Banc Securities" means any security, financial interest, preferred share, common share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option

(including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

7.      "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

8.      "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

9.       "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

10.       "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

11.       "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

13.      "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

14.      "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives,

consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

17.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file

layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

18.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

19.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

22.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC, Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors

Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset

Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global

Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE

Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund

Advisors, and COR International, including, without limitation, any of their predecessors,

successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees,

agents, representatives, consultants, attorneys, or any other person acting on their behalf.

Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control

over such entities.

23.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in

SECURITIES and with respect to CSS, LLC, any individual or entity which invested in or

owns a financial interest in CSS, LLC.

24.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its

predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers,

employees, principals, trustees, agents, representatives, consultants, internal and external

attorneys, or any other person acting on their behalf.

25.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its

predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers,

employees, principals, trustees, agents, representatives, consultants, internal and external

attorneys, or any other person acting on their behalf.

26.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its

predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers,

employees, principals, trustees, agents, representatives, consultants, internal and external

attorneys, or any other person acting on their behalf.

27.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates,

divisions, directors, officers, employees, principals, trustees, agents, representatives,

consultants, internal and external attorneys, or any other person acting on their behalf.

28. "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29. "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

30. "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

31. "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

32. "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

33. "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

34. "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

35. "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October

2016.

36.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

37.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

38.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

39.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

40.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

41.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

42.     "You," or "your" means (a) CSS, LLC; (b) any owned, operated or affiliated predecessors, successors, parents, subsidiaries, affiliates, divisions, advisors, partnerships, funds,

investment vehicles owned, controlled by, associated with CSS, LLC or in which CSS, LLC (collectively "CSS Affiliates"); and (c) any directors, officers, employees, agents, advisors, representatives, and all other persons acting or purporting to act on behalf of CSS, LLC or CSS Affiliates.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.   INSTRUCTIONS

1.      In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.      All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

a.      the privilege being asserted;

b.     the person on whose behalf the privilege is asserted;

c.     a precise statement of the facts upon which the claim of privilege is based; and

d.     identify the purported privileged document, including:

     (1)     its nature, e.g., letter, memorandum, tape, etc.;

     (2)     the date it was prepared;

     (3)     the date the document bears;

     (4)     the date the document was sent;

     (5)     the date it was received;

     (6)     the name of the person who prepared the document;

     (7)     the name(s) of the person(s) who received the document;

     (8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

     (9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.     If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.     The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions herein.

## III.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.   DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;

- Due diligence materials obtained from BANC;

- Documents regarding potential investments in BANC;

- COMMUNICATIONS with BANC board members, officers, or other representatives; and

- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS

ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno, JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or

SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

REQUEST NO. 11:

All INVESTORS in YOU as of October 18, 2016, including contact information sufficient to identify the principals, addresses, and contact information associated with the INVESTOR.

EXHIBIT 5

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In re Banc of California Securities Litigation | ) | |
| _____ | ) | |
| *Plaintiff* | ) | Civil Action No.   SACV 17-00118 AG (DFMx) |
| v. | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                           Adam J.  Denno, 3038 N Raleigh Street
Denver, CO 80212

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Dispatch Legal Services, 5910 S. University Blvd., Unit C18-146, Greenwood Village, CO  80121, (877) 591-9979 | Date and Time:   08/08/2018 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/17/2018

|  | *CLERK OF COURT* | OR | |
|---|---|---|---|
| | _____ | | /s/  Kristen M. Tuey _____ |
| | *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
   **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
   **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
   **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
   **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
   **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### I.     DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Denno," "you," or "your" shall mean Adam J. Denno and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.      "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.       "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.       "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.       "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.       "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.       "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.       "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.       "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.    "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.    "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.    "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.    "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.    "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.    "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.    "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

a.     the privilege being asserted;

b.     the person on whose behalf the privilege is asserted;

c.     a precise statement of the facts upon which the claim of privilege is based; and

d.     identify the purported privileged document, including:

(1)     its nature, e.g., letter, memorandum, tape, etc.;

(2)     the date it was prepared;

(3)     the date the document bears;

(4)     the date the document was sent;

(5)     the date it was received;

(6)     the name of the person who prepared the document;

(7)     the name(s) of the person(s) who received the document;

(8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.      The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO ADAM J DENNO

herein.

## III.     RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.    DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;

- Due diligence materials obtained from BANC;

- Documents regarding potential investments in BANC;

- COMMUNICATIONS with BANC board members, officers, or other representatives; and

- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

 REQUEST NO. 10:

 All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

EXHIBIT 6

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   SACV 17-00118 AG (DFMx) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Kalyn Matthews Denno, 3038 N Raleigh Street Denver, CO 80212

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Dispatch Legal Services, 5910 S. University Blvd., Unit C18-146, Greenwood Village, CO 80121, (877) 591-9979 | Date and Time: 08/08/2018 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/17/2018

*CLERK OF COURT*

                                  OR

_____         /s/  Kristen M. Tuey

*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### I.  DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Denno," "you," or "your" shall mean Kalyn Mathews Denno and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.      "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.      "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.      "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.      "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.      "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.      "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.      "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.      "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.      "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.     "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.     "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.     "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.     "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.     "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.     "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.     "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO KALYN MATHEWS DENNO

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO KALYN MATHEWS DENNO

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

II.     **INSTRUCTIONS**

1.      In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.      All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

        a.      the privilege being asserted;

        b.      the person on whose behalf the privilege is asserted;

        c.      a precise statement of the facts upon which the claim of privilege is based; and

        d.      identify the purported privileged document, including:

(1)     its nature, e.g., letter, memorandum, tape, etc.;

(2)     the date it was prepared;

(3)     the date the document bears;

(4)     the date the document was sent;

(5)     the date it was received;

(6)     the name of the person who prepared the document;

(7)     the name(s) of the person(s) who received the document;

(8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.     If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.     The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.     The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

herein.

## III.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.   DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad

Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL

MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT,

CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG

PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John

Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton,

Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

EXHIBIT 7

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  SACV 17-00118 AG (DFMx) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                     David  Matthews, 5638 Tremont Street, Dallas Texas 75214
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 | Date and Time: 08/08/2018 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/17/2018

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | /s/  Kristen M. Tuey     *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____              on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____              _____
                                                           *Server's signature*

                                         _____
                                                           *Printed name and title*

                                         _____
                                                           *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Mathews," "you," or "your" shall mean David Mathews and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.      "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8. "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9. "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10. "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11. "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12. "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14. "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.    "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.    "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.    "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.    "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.    "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.      "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.      "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.      "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.      "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.      "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.      "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.      "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

a.     the privilege being asserted;

b.     the person on whose behalf the privilege is asserted;

c.     a precise statement of the facts upon which the claim of privilege is based; and

d.     identify the purported privileged document, including:

(1)     its nature, e.g., letter, memorandum, tape, etc.;

(2)     the date it was prepared;

(3)     the date the document bears;

(4)     the date the document was sent;

(5)     the date it was received;

(6)     the name of the person who prepared the document;

(7)     the name(s) of the person(s) who received the document;

(8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.     If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.     The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.     The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO DAVID MATHEWS

herein.

## III.      RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.    DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO DAVID MATHEWS

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

EXHIBIT 8

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In re Banc of California Securities Litigation | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   SACV 17-00118 AG (DFMx) |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:            Gary Matthews, 5623 Suwanee Road, Fairway, KS 66205

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Executive Investigative Service, 927 S. Sunset Dr., Olathe, KS  66061, (877) 591-9979 | Date and Time: 08/08/2018 0:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/17/2018

CLERK OF COURT

OR

_____           /s/  Kristen M. Tuey
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:
Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.    "Mathews," "you," or "your" shall mean Gary Robert Mathews and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.    "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.    "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.    "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.    "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.    "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.      "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.      "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.      "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.      "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.      "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.      "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO GARY ROBERT MATHEWS

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.    "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.    "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.    "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.    "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.    "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.    "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.    "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

        a.     the privilege being asserted;

        b.     the person on whose behalf the privilege is asserted;

        c.     a precise statement of the facts upon which the claim of privilege is based; and

        d.     identify the purported privileged document, including:

(1)    its nature, e.g., letter, memorandum, tape, etc.;

(2)    the date it was prepared;

(3)    the date the document bears;

(4)    the date the document was sent;

(5)    the date it was received;

(6)    the name of the person who prepared the document;

(7)    the name(s) of the person(s) who received the document;

(8)    the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)    a statement of whom each identified person represented or purported to represent at all relevant times.

5.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.      The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

herein.

## III.    RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.    DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO GARY ROBERT MATHEWS

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad

Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL

MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT,

CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG

PARTNERS.

<u>REQUEST NO. 10</u>:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John

Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton,

Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

# EXHIBIT 9

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.  SACV 17-00118 AG (DFMx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Keith Allen Dilling, 13208 Meandering Way, Dallas TX 75240

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 | Date and Time: 08/08/2018 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     07/17/2018

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/  Kristen M. Tuey |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

## I.     DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Dilling," "you," or "your" shall mean Keith Allen Dilling and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.      "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.      "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.      "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.      "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.      "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.      "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.      "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.      "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.     "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.     "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.     "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.     "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.     "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.     "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.     "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

36.    "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.    "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.    "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.    "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.    "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.    "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.    "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

   a.     the privilege being asserted;

   b.     the person on whose behalf the privilege is asserted;

   c.     a precise statement of the facts upon which the claim of privilege is based; and

   d.     identify the purported privileged document, including:

    (1)       its nature, e.g., letter, memorandum, tape, etc.;

    (2)       the date it was prepared;

    (3)       the date the document bears;

    (4)       the date the document was sent;

    (5)       the date it was received;

    (6)       the name of the person who prepared the document;

    (7)       the name(s) of the person(s) who received the document;

    (8)       the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

    (9)       a statement of whom each identified person represented or purported to represent at all relevant times.

5.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.      The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

herein.

## III.     RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.    DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO KEITH ALLEN DILLING

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

 REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

 REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

EXHIBIT 10

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   SACV 17-00118 AG (DFMx) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Rosemary Norris Hall, 6848 Bandera Avenue, Apartment 237, Dallas, TX 75225

_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: First Legal Records c/o Courier Management Systems, 1150 Empire Central Place, Ste. 106-A, Dallas, TX 75247, (877) 591-9979 | Date and Time: 08/08/2018 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     07/17/2018

|  | |
|---|---|
| *CLERK OF COURT* | |
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | /s/  Kristen M. Tuey |
| | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
**(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
**(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
**(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
**(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
**(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.     "Hall," "you," or "your" shall mean Rosemary Norris Hall and any employees, agents, advisors, representatives, consultants, attorneys, and all other persons acting or purporting to act on your behalf.

2.     "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

3.     "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

4.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

5.     "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on October 18, 2016.

6.     "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

7.     "Banc Securities" means any security, financial interest, preferred share, common

share, option, note, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, contract, option (including puts or calls), or right to subscribe to, purchase, borrow against, or sell any of the foregoing concerning Banc.

8.      "Blog" refers to the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

9.      "Bloomberg News" shall mean Bloomberg News and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

10.      "Board" or "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

11.      "Castalian Partners Value Fund, LP" shall mean Castalian Partners Value Fund, LP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on its behalf.

12.      "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.      "COR Clearing" shall mean COR Clearing, LLC and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

15.     "COR Securities Holdings" shall mean COR Securities Holdings, Inc. and, without limitation, its current or former predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

16.     "CSS LLC" shall mean CSS LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

18.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

19.     "Endicott Management Co." shall mean Endicott Management Company and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

20.     "FIG Partners" shall mean FIG Partners and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

21.     "G2 Trading LLC" shall mean G2 Trading LLC or G-2 Trading LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

22.     "Galanis" shall mean Jason W. Galanis and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

23.     "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd., Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham Securities, Inc., Burnham Financial Group, Burnham Asset Management Corporation, BAM Holdings, LLC,

Thorsdale Fiduciary and Guaranty Company Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-Assurance AG, Wealth Assurance Private Client Corporation, Valorlife Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd., Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing Limited, GMT Duncan LLC, COR Fund Advisors, and COR International, including, without limitation, any of their predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. Nothing in this definition shall admit, concede, or suggest that Jason Galanis had any control over such entities.

24.     "Investors" shall mean persons or entities who engage in TRANSACTIONS in SECURITIES.

25.     "JCSD Partners LP" shall mean JCSD Partners LP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

26.      "KBW" shall mean Keefe, Bruyette & Woods, Inc. and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

27.     "Patriot Capital" shall mean Patriot Capital and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

28.     "Peak 6 Capital Management LLC" shall mean Peak 6 Capital Management,

LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

29.      "PL Capital" shall mean PL Capital, LLC and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

30.      "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.      "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

32.      "Regulators" shall refer to the regulatory agencies responsible for overseeing the securities industry or banking industry, including without limitation the Federal Reserve Board, United States Department of the Treasury, the Office of the Comptroller of the Currency, or the Financial Industry Regulatory Authority (FINRA).

33.      "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, employees, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

34.      "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

35.      "Seeking Alpha" shall mean SeekingAlpha of SeekingAlpha.com, any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO ROSEMARY NORRIS HALL

36.     "Shorts" shall mean INVESTORS engaged in the practice of short selling SECURITIES, including without limitation INVESTORS who sold BANC short in October 2016.

37.     "Sparrow Fund Management" shall mean any of the following entities and their direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present and former officers, directors, employees, agents, advisors, and all other persons acting or purporting to act on their behalf, including Sparrow Fund Management LP, Sparrow Fund Management LLP, Sparrow GP, LLC, Sparrow Partners, LP, and Sparrow Fund Performance, LLC.

38.     "Stifel" shall mean Stifel Financial Corp., any of its direct or indirect subsidiaries, divisions or affiliates, parents, predecessors, successors, present or former officers, employees, directors, employees, agents, advisors, and all other persons acting or purporting to act on its behalf.

39.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

40.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

41.     "Transactions" shall mean any actual or attempted orders, purchases, acquisitions, sales, swaps, dispositions, tenders, donations, receipt, gifts, transfers, puts, calls, short sales, equities, debt, derivatives, or any other means by which YOU, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

42.     "Wellington Management" shall mean Wellington Management Company LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

ATTACHMENT A TO SUBPOENA (DOCUMENTS) TO ROSEMARY NORRIS HALL

43.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.     INSTRUCTIONS

1.      In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.      All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

        a.      the privilege being asserted;

        b.      the person on whose behalf the privilege is asserted;

        c.      a precise statement of the facts upon which the claim of privilege is based; and

        d.      identify the purported privileged document, including:

(1)     its nature, e.g., letter, memorandum, tape, etc.;

(2)     the date it was prepared;

(3)     the date the document bears;

(4)     the date the document was sent;

(5)     the date it was received;

(6)     the name of the person who prepared the document;

(7)     the name(s) of the person(s) who received the document;

(8)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(9)     a statement of whom each identified person represented or purported to represent at all relevant times.

5.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.      The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions

herein.

## III.    RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from October 1, 2015 to April 30, 2017 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## IV.   DOCUMENT REQUESTS

REQUEST NO. 1:

All COMMUNICATIONS with BANC, or third parties representing BANC in connection with the COMMUNICATION, including without limitation:

- Non-disclosure agreements;
- Due diligence materials obtained from BANC;
- Documents regarding potential investments in BANC;
- COMMUNICATIONS with BANC board members, officers, or other representatives; and
- COMMUNICATIONS regarding SUGARMAN, GALANIS, any ALLEGED GALANIS ENTITY, AURELIUS, or Winston & Strawn LLP.

REQUEST NO. 2:

All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES, including without limitation:

- The total position YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;
- The total amount of put options YOU held in BANC SECURITIES at the end of the trading day of October 17, 2016;

- YOUR transactions in BANC SECURITIES on October 18, 19, 20, and 21, 2016, and throughout the Relevant Period; and

- Documents sufficient to reflect or calculate the amount of profit YOU earned on all put options YOU held in BANC SECURITIES that were set to expire on or after October 21, 2016.

REQUEST NO. 3:

All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES including without limitation:

- All investment memorandum, emails, models, and other analysis relating to TRANSACTIONS in BANC SECURITIES;

- All investment committee minutes, resolutions or other COMMUNICATIONS regarding any TRANSACTION in BANC SECURITIES; and

- All research, investigations, analysis or reports prepared by YOU, private investigators, investigation research firms or other third parties regarding BANC, GALANIS, or any ALLEGED GALANIS ENTITY.

REQUEST NO. 4:

All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS, including without limitation any COMMUNICATIONS with AURELIUS or SEEKING ALPHA, and including without limitation any DOCUMENTS relating to AURELIUS's identity.

REQUEST NO. 5:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNICATIONS between YOU and any of the following people or entities:  BLOOMBERG NEWS, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Gary Robert Mathews, CSS LLC, Keith Allen Dilling, David Mathews, Rosemary Norris Hall, Kalyn Mathews Denno, Adam Denno,

JCSD PARTNERS LP, G2 TRADING LLC, Jacques Brousseau, Andrew Left, Michael David Gold, Kenneth Gold, Zeke Faux, Jenny Surane, Dakin Campbell, Eben Novy-Williams, Steven Didion, Richard Lashley, PL CAPITAL, W. Kirk Wycoff, PATRIOT CAPITAL, ENDICOTT MANAGEMENT CO., Basswood, Halle Bennett, KBW, STIFEL, Jeffrey Karish, Jonah Schnel, Robert Sznewajs, SUGARMAN, Francisco Turner, Jason Sugarman, Nathan Koppikar, SPARROW FUND MANAGEMENT, Andrew Secrist, Christopher Carroll, Tim Coffey, FIG PARTNERS, Thomas Michaud (or Thomas Beaulieu Michaud), BofI Holding Inc., COR CLEARING, COR SECURITIES HOLDINGS, Zeke Faux, Jenny Surane, Dakin Campbell, or GALANIS.

REQUEST NO. 6:

All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY.

REQUEST NO. 7:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and COR CLEARING or COR SECURITIES HOLDINGS regarding BANC or SUGARMAN.

REQUEST NO. 8:

All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and Robbins Geller Rudman & Dowd, Bragar Eagel & Squire, P.C., Bronstein, Gewirtz & Grossman, LLC, Faruqi & Faruqi, LLP, Glancy Prongay & Murray LLP, Goldberg Law PC, Hagens Berman Sobol Shapiro LLP, Holzer & Holzer, LLC, Hynes Keller & Hernandez, LLC, Johnson & Weaver, LLP, Khang & Khang LLP, Law Offices of Howard G. Smith, Levi & Korsinsky, LLP, Lifshitz & Miller Law Firm, Lundin Law PC, Rosen Law Firm, the SEC, other REGULATORS, or other BANC INVESTORS or SHORTS, or any representatives thereof, relating to BANC or SUGARMAN.

REQUEST NO. 9:

All CORRESPONDENCE with any of the following people or entities from 2013 to the present: PATRIOT CAPITAL (including W. Kirk Wycoff); PL CAPITAL (including Richard

Lashley); Halle Benett, Jeffrey Karish, SUGARMAN, Francisco Turner, Jonah Schnel, Chad Brownstein, COR CLEARING or its current or former employees, PEAK 6 CAPITAL MANAGEMENT LLC, James Gibson, Nathan Koppikar, SPARROW FUND MANAGEMENT, CASTALIAN PARTNERS VALUE FUND, LP, BLOOMBERG NEWS (or its journalists), or FIG PARTNERS.

REQUEST NO. 10:

All CORRESPONDENCE with any of the following people or entities: GALANIS, John Galanis, Jared Galanis, Hugh Dunkerely, Gary T. Hirst, Bevan T. Cooney, Michelle A. Morton, Devon D. Archer, Ymer Shahini, Derek Hamels, Francisco Martin or Monet Berger.

EXHIBIT 11

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In re Banc of California Securities Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   SACV 17-00118 AG (DFMx) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Michelman & Robinson, 10880 Wilshire Boulevard, 19th Floor, Los Angeles, CA 90024

_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Latham & Watkins LLP | Date and Time: |
|---|---|
| 355 S. Grand Avenue, Suite 100 Los Angeles, CA 90071 | 08/08/2018 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/17/2018

|  | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | /s/  Kristen M. Tuey |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Steven A. Sugarman _____ , who issues or requests this subpoena, are:

Latham & Watkins LLP, 355 S. Grand Ave., Ste 100, Los Angeles, CA 90071, 213.485.1234, kristen.tuey@lw.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  SACV 17-00118 AG (DFMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____        on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                     *Server's signature*

                                                       _____
                                                                     *Printed name and title*

                                                       _____
                                                                     *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### I.   DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      "Banc" shall collectively refer to Defendant Banc of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf. As used herein, "Banc" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, and as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

5.      "Communication" or "communications" means e-mail, text message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Document" or "documents" is defined to mean all documents, electronically stored information, and tangible things in the broadest sense under Rule 34 of the Federal Rules

of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document bearing on any sheet or side thereof, any marks, including, without limitation, initials, notations, comments, or marginalia of any character which are not part of the original text or reproduction thereof, shall be considered a separate document. Document or documents shall include without limitation any and all Communications.

8.      "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail or "e-mail" receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

9.     "Engagement" shall mean Your representation of Banc of California, N.A. during the time period October 1, 2016 to January 23, 2017 in connection with (a) the investigation conducted by WilmerHale on behalf of the Special Committee of Banc of California, Inc., (b) the enhancement of Banc's controls environment, and/or (c) whistleblower or other reports of potential or actual misconduct.  For further clarification and avoidance of doubt, the Engagement includes Your representation of Banc of California, N.A. which resulted in or was in connection with the subject matters of the following:  (a) the letters attached as Exhibit 1; and/or (b) the receipt, analysis, or communication of any whistleblowing or misconduct allegations against any member of the Special Committee of Banc of California, Inc. or Banc management during the time period October 1, 2016 to January 23, 2017.

10.     "John Grosvenor" shall mean John C. Grosvenor and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

11.      "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

12.     "Refer, reflect, or relate to" and similar terms, used together or alone, shall mean all information, facts, or documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

13.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

14.      "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

15.     "WilmerHale" shall mean the law firm Wilmer Cutler Pickering Hale and Dorr, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on its behalf.

16.     "You," or "your" shall mean Michelman & Robinson, LLP and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, employees, principals, trustees, agents, representatives, consultants, internal and external attorneys, or any other person acting on their behalf.

17.     As used herein, the use of the singular form of any word shall include the plural form of the same and vice versa.

## II.   INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     All documents should be produced: (a) as they are kept in the ordinary course of business, complete with legible copies of the labels of file folders, binders, containers, or other devices from which they were taken, or (b) organized according to the request to which they respond.

3.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

   a.     the privilege being asserted;

b. the person on whose behalf the privilege is asserted;

c. a precise statement of the facts upon which the claim of privilege is based; and

d. identify the purported privileged document, including:

 (1) its nature, e.g., letter, memorandum, tape, etc.;

 (2) the date it was prepared;

 (3) the date the document bears;

 (4) the date the document was sent;

 (5) the date it was received;

 (6) the name of the person who prepared the document;

 (7) the name(s) of the person(s) who received the document;

 (8) the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

 (9) a statement of whom each identified person represented or purported to represent at all relevant times.

5. If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6. You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7. The singular of any term includes the plural, the use of one gender or pronoun shall include all others, as appropriate in the context, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

8.      The requests herein are continuing so that any additional documents responsive to the requests herein that you acquire or discover, up to and including the time of trial, shall be furnished through prompt supplemental responses as required by Fed. R. Civ. P. 26(e). This paragraph shall not be construed to alter your obligations to comply with all other instructions herein.

## III.    DOCUMENT REQUESTS

REQUEST NO. 1:

All Communications with WilmerHale in connection with, relating to, or arising out of the Engagement, including without limitation Communications relating to the attorney-client privilege, the common interest privilege, the joint defense privilege, or any waiver or potential waiver thereof.

REQUEST NO. 2:

All final or draft Communications with John Grosvenor in connection with, relating to, or arising out of the Engagement.

REQUEST NO. 3:

All Communications with any director of Banc in connection with, relating to, or arising out of the Engagement.

REQUEST NO. 4:

All memoranda regarding or reflecting allegations, claims, reports or concerns of potential or actual wrongdoing or misconduct at Banc prepared in connection with, relating to, or arising out of the Engagement.